HERBERT A. NIEMAN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56675, 56674, 56687.   Filed November 30, 1959.

*Harvey W. Peters, Esq.,* and *William A. Jackson, Esq.,* for the petitioners.

*Erving Sodos, Esq.,* for the respondent.

### OPINION.

VAN FOSSAN, *Judge:*  Respondent determined deficiencies in petitioners' income taxes for the taxable years ended December 31, 1944, 1945, and 1947, as follows:

| Docket No. | Petitioner | Year ended Dec. 31— | Deficiency |
|---|---|---|---|
| 56675 | Herbert A. Nieman | 1944 | $7,294.13 |
| | | 1945 | 38,388.04 |
| | | 1947 | 3,249.87 |
| 56674 | Arnold F. Nieman | 1945 | 232.00 |
| 56687 | Roland J. Nieman | 1945 | 215.00 |

Petitioner Herbert A. Nieman claimed overpayment for the year 1945 in the amount of $6,083.11.

Several questions have been resolved by stipulation of the parties. The stipulation will be given effect under Rule 50.

Two issues remain for our consideration: First, whether petitioners are entitled to a net operating loss carryback from 1947 to 1945 and, if so, the amount; and second, whether a loss incurred by petitioner Herbert A. Nieman in 1947 is deductible in that year.

All of the facts are stipulated and are so found.

Petitioner Herbert A. Nieman is an individual residing at Thiensville, Wisconsin.   Petitioners Arnold F. Nieman and Roland J.

---

[1] Proceedings of the following petitioners are consolidated herewith: Arnold F. Nieman, Docket No. 56674, and Roland J. Nieman, Docket No. 56687.

Nieman are individuals residing at Cedarburg, Wisconsin. Each of the petitioners filed his returns for the years here involved with the collector of internal revenue at Milwaukee, Wisconsin.

Nieman Fur Farms Co., a copartnership conducting a fox fur farm at Thiensville, Wisconsin, was formed on October 1, 1941. The shares of partnership profits and capital applicable to 1947 were as follows:

|  | Per cent |
|---|---|
| Herbert A. Nieman | 50 |
| Orlando Nieman | 20 |
| Arnold F. Nieman | 15 |
| Roland J. Nieman | 15 |

On November 29, 1947, the Nieman Fur Farms Co. copartnership entered into a bill of sale with Herbert A. Nieman & Co. The pertinent provisions of the bill of sale are set forth below:

### BILL OF SALE

HERBERT A. NIEMAN, ORLANDO J. NIEMAN, ARNOLD F. NIEMAN, and ROLAND J. NIEMAN, as Partners of Nieman Fur Farms Co., a copartnership operating a silver fox fur farm in Ozaukee County, Wisconsin,

Sellers

to

HERBERT A. NIEMAN & CO., (a Wisconsin corporation)

Buyer.

THIS BILL OF SALE AND CONVEYANCE, made in the Village of Thiensville, State of Wisconsin, on November 29, 1947, between Herbert A. Nieman, et al., partners of Nieman Fur Farms Co., a fur farm located in Ozaukee County, Wisconsin, (herein called the Sellers), and Herbert A. Nieman & Co., a Wisconsin corporation, (herein called the Buyer), being made in accordance with an Offer of Sale made and accepted this day,

### WITNESSETH

That the Sellers, in part consideration of the issuance to the partnership of Twelve Hundred Seventy (1270) shares of the capital stock of the Buyer, and in part the assumption of certain obligations of the Sellers, as partners, by the Buyer, and of other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, and of the covenants and agreements of the Buyer hereinafter contained, do hereby sell, grant, convey, assign, transfer and set over to the Buyer,

All the property and assets, real, personal and mixed, both tangible and intangible, of whatsoever nature and description, and wheresoever situated, and all the rights, franchises and privileges of the Sellers in the fur farm heretofore conducted by the Sellers as partners in the County of Ozaukee, Wisconsin, and conducted under the name of Nieman Fur Farms Co., including, without limitation of the foregoing, all real estate, leases, choses in action, shares of stock, bank accounts, trade acceptances, bills of exchange, checks, drafts, notes, accounts receivable, both current and those that have heretofore been written off from the books of said partnership business, causes of action, judgments, debts, bonds, contracts, insurance policies of every kind, and obligations of every value and description, trade-marks, trade names,

copyrights, patents, applications for patents, patent rights, licenses and rights analagous thereto, trade secrets and formulas and processes of manufacture, inventories, goods, material and supplies, cash and other assets, property and estate of every kind as of the close of business this [left blank]

\*      \*      \*      \*      \*      \*      \*

2. In consideration of the premises, the Buyer, for itself, its successors and assigns, hereby assumes and covenants,

(a) To pay fully and discharge completely, in due course, to the acquittal of the Sellers, all debts and liabilities of said partnership business of every kind and nature and to assume, perform and liquidate all of the outstanding contracts of said business of whatsoever nature and kind;

(b) To indemnify and hold the Sellers harmless from and against all claims, demands, liabilities, costs and expenses, now existing, or that may hereafter arise, in connection with any such debts.

\*      \*      \*      \*      \*      \*      \*

5. There is attached and made a part hereof a schedule of the assets to be transferred and the liabilities to be assumed as of the close of business November 29, 1947. The assets are stated at their cost basis.

6. The Buyer agrees to issue the shares of its capital stock as hereinabove provided in the name of Nieman Fur Farms Co., a co-partnership, the Sellers.

\*      \*      \*      \*      \*      \*      \*

IN WITNESS WHEREOF, the Sellers and the Buyer have hereunto set their hands and seals, the day and year first above written. Executed in duplicate.

NIEMAN FUR FARMS CO., *a co-partnership*

In the presence of:

By /s/ Herbert A. Nieman
HERBERT A. NIEMAN,
*Partner*

/s/ Edna Rowe

By /s/ Orlando J. Nieman
ORLANDO J. NIEMAN,
*Partner*

/s/ Bernard C. Kurth

By /s/ Arnold F. Nieman
ARNOLD F. NIEMAN,
*Partner*

Witness as to all partners.

By /s/ Roland J. Nieman
ROLAND J. NIEMAN,
*Partner*

THE SELLERS

(CORPORATE SEAL)

HERBERT A. NIEMAN & CO.

By /s/ Herbert A. Nieman
HERBERT A. NIEMAN,
*President*

THE BUYER

Attest:
/s/ Elmer J. Pipkorn
*Secretary*

The balance sheet of the partnership as of November 29, 1947, and just prior to the sale to Herbert A. Nieman & Co., was as follows:

Current Assets
| | | |
|---|---|---|
| Cash | $9, 507. 20 | |
| Accounts receivable | 24. 23 | |
| Inventory | 180, 611. 43 | |
| Total | | $190, 142. 86 |

Fixed Assets
| | | |
|---|---|---|
| Land | $17, 700. 00 | |
| Farm buildings | 12, 537. 41 | |
| Residence | 4, 811. 19 | |
| Yards and kennels | 121, 416. 31 | |
| Machinery | 3, 552. 44 | |
| Tools and equipment | 3, 990. 05 | |
| Trucks | 1, 693. 59 | |
| Office furniture and fixtures | 37. 57 | |
| Total | $165, 738. 56 | |
| Depreciation reserve | 88, 824. 05 | |
| | | 76, 914. 51 |
| | | $267, 057. 37 |

Current Liabilities
| | | |
|---|---|---|
| Accounts payable | $8, 747. 35 | |
| Capital | 258, 310. 02* | |
| | | 267, 057. 37 |

| | | |
|---|---|---|
| *Capital | $258, 310. 02 | |
| Less—1270 shares of stock received on sale | 127, 000. 00 | |
| Loss on sale of assets | $131, 310. 02 | |

The partnership valued its inventories for book and tax-reporting purposes at lower of cost or market.

Included in the assets of November 29, 1947, and among the assets sold to Herbert A. Nieman & Co. were inventories having a book value of $180,159.79. This figure was composed of the following categories:

| | Unit value | Number of units | Total book value |
|---|---|---|---|
| Old foxes | $16. 21 | 3, 159 | $51, 239. 81 |
| Pelts at New York | 15. 13 | 2, 233 | 33, 785. 29 |
| Young foxes | 16. 75 | 5, 680 | 95, 134. 69 |
| Total | | 11, 072 | 180, 159. 79 |

The pelts mentioned above in the amount of $33,785.29 represented 2,233 pelts located at New York City. Of these, 2,210 had been sold on November 13, 1947, by the New York Fur Auction Com-

pany for a net selling price of $32,990.45, and that amount was, in fact, an account receivable on the date the assets of the partnership were sold.

After November 29, 1947, the only asset of the partnership was the 1,270 shares of capital stock of Herbert A. Nieman & Co. received as consideration by the partnership under the bill of sale. The stock was valued at $127,000 for purposes of book and tax reporting. This figure was computed by recognizing the fair market value at $100 per share.

Respondent determined that as of November 29, 1947, the partnership owed a liability totaling $32,064.07. The amount of $31,895.07 was attributable to the ranching of the partnership's 1947 foxes which were shipped to Hiawatha Fur Farm Co. for ranching and pelting. This expense was a normal cost of production, and entered into the determination of profit and loss from the operations of the business in all years prior to 1947.

The young foxes sold to Herbert A. Nieman & Co. on November 29, 1947, when pelted, would produce pelts of a quality equivalent to that of the 2,210 pelts sold by the New York Fur Auction Company at New York City on November 13, 1947.

The partnership income tax return for the calendar year 1947 was filed in February 1948. The net profit or loss reported by the partnership on the return and the adjustments made thereto by respondent were as follows:

| | Profit (or loss) from operations | Loss from sale of pelt inventory | Loss from sale of assets | Total |
|---|---|---|---|---|
| Net profit (or loss) per books | ($846.55) | None | ($131,310.02) | ($132,156.57) |
| (a) Salary paid to partner | 1,625.00 | | | 1,625.00 |
| Ordinary net income per return | 778.45 | None | (131,310.02) | (130,531.57) |
| Additions: | | | | |
| (b) Additional selling price of assets | | | 32,064.07 | 32,064.07 |
| Total | 778.45 | None | (99,245.95) | (98,467.50) |
| Deductions: | | | | |
| (c) Advertising and selling expense | 169.00 | | | 169.00 |
| (d) Additional cost of production | | | 31,895.07 | 31,895.07 |
| Total deductions | 169.00 | None | 31,895.07 | 32,064.07 |
| Balance | 609.45 | None | (131,141.02) | (130,531.57) |
| Transfer: | | | | |
| (e) Loss from sale of pelt inventory | | ($23,217.53) | 23,217.53 | |
| Ordinary net income as amended | [1] 609.45 | (23,217.53) | (107,923.49) | (130,531.57) |

[1] The 1947 profit from operations is, by stipulation of the parties, reduced to a net profit of $105.25, as follows:

*Profit (or loss) from operations*

| | |
|---|---|
| As determined by respondent | $609.45 |
| Less: Additional interest expense | 504.20 |
| As adjusted | 105.25 |

The following schedule shows the stockholders of Herbert A. Nieman & Co. as of November 29, 1947, with their respective shareholdings and relationships to the partners of the Nieman Fur Farms Co. partnership:

| Name | Shares | Relation to Partners |
|---|---|---|
| Herbert A. Nieman | 4, 825 | Partner in Nieman Fur Farms Co. |
| Alice Nieman Stephenson | 920 | Sister of Herbert A. Nieman. |
| John W. Nieman | 760 | Brother of Herbert A. Nieman. |
| Edwin J. Nieman | 570 | Brother of Herbert A. Nieman. |
| Estate of Martha Nieman | 421 | Mother of Herbert A. Nieman (Herbert A. Nieman, his brother and sister are sole heirs of Martha Nieman). |
| Gertrude Mildred Nieman | 84 | Wife of Herbert A. Nieman. |
| Minnie Nieman | 111 | Mother of Orlando, Arnold, and Roland Nieman. |
| Orlando Nieman | 84 | Partner in Nieman Fur Farms Co. |
| Mrs. Orlando Nieman | 54 | Wife of Orlando Nieman. |
| Arnold Nieman | 54 | Partner in Nieman Fur Farms Co. |
| Mrs. Arnold Nieman | 54 | Wife of Arnold Nieman. |
| Roland Nieman | 54 | Partner in Nieman Fur Farm Co. |
| Mrs. Roland Nieman | 54 | Wife of Roland Nieman. |
| Nieman Fur Farms Co | 1, 270 | Owned by partnership. |
| Other stockholders | 3, 665 | |
| Total after 11/29/47 | 12, 980 | |
| Less: Stock issued to stockholders of Hiawatha Fur Farms Co. in merger 11/29/47: | | |
| Herbert A. Nieman | (720) | |
| John W. Nieman | (50) | |
| Alice Nieman Stephenson | (50) | |
| Orlando Nieman | (20) | |
| Other stockholders | (870) | |
| Total before 11/29/47 | 10, 000 | |

The first question is whether a contract of sale, entered into between petitioners and one other as partners of Nieman Fur Farms Co. (sellers) and Herbert A. Nieman & Co. (buyer), was a contract for the sale of partnership assets, or for the sale of the partners' interests in the partnership.

Petitioners contend that the sale was of the partnership assets. Respondent, on the other hand, has determined the sale to have been of the partners' partnership interests. We are of the opinion that respondent's view must be upheld.

In applying tax statutes, matters of substance are of first importance. *Kaiser* v. *Glenn*, 216 F. 2d 551 (C.A. 6, 1954).

The contract of sale entered into between the parties provided, *inter alia*, that the sellers, as partners, sold, granted, conveyed, assigned, transferred, and set over to the buyer—

All the property and assets, real, personal and mixed, both tangible and intangible, of whatsoever nature and description, and wheresoever situated, and all the rights, franchises and privileges of the Sellers in the fur farm heretofore conducted by the Sellers as partners in the County of Ozaukee, Wisconsin, and conducted under the name of Nieman Fur Farms Co., including, without limitation of the foregoing, all real estate, leases, choses in action, shares of stock, bank accounts, trade acceptances, bills of exchange, checks, drafts, notes, accounts receivable, both current and those that have heretofore been written off from the books of said partnership business, causes of action, judgments, debts, bonds, contracts, insurance policies of every kind, and obligations of every value and description, trade-marks, trade names, copyrights, patents, applications for patents, patent rights, licenses and rights analagous thereto, trade secrets and formulas and processes of manufacture, inventories, goods, material and supplies, cash and other assets, property and estate of every kind as of the close of business this [left blank].

In consideration the buyer agreed to issue to the partnership 1,270 shares of its own capital stock and further agreed to pay all debts and liabilities of the partnership business, perform and liquidate all the outstanding contracts of the business, and to hold the sellers harmless against all claims, demands, liabilities, costs, and expenses then existing or which might thereafter arise.

It is clear that what the sellers conveyed and the purchaser acquired was the going business formerly carried on by the partnership, and not merely the physical assets of the partnership. More comprehensive language can scarcely be imagined. We conclude that the sale resulted in a disposal by petitioners of their partnership interests. *Kaiser* v. *Glenn, supra; W. Ferd Dahlen,* 24 T.C. 159 (1955). It follows that the loss realized by the petitioners on the sale was a capital loss. Cf. G.C.M. 26379, 1950–1 C.B. 58.

Section 122(d)(4) of the Internal Revenue Code of 1939 provides that losses from sales or exchanges of capital assets may not be used in the computation of a net operating loss carryback, except to the extent of net gains from sales or exchanges of capital assets within the same year.[2] *Butler Consolidated Coal Co.,* 6 T.C. 183,

---

[2] SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

(b) AMOUNT OF CARRY-BACK AND CARRY-OVER.—

(1) NET OPERATING LOSS CARRY-BACK.—If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d)(1), (2), (4), and (6), and (B) by determining the net

190 (1946). Accordingly, we hold that petitioners are not entitled to a net operating loss carryback to 1945.

Petitioners would have us believe that the partnership remained in existence after the sale and that consequently the sale must have been only of the assets and not of the respective partnership interests. The record does not support this conclusion. The fact that the shares of Herbert A. Nieman & Co. received by the partnership in the sale may have been held by it for a time after the sale is of no consequence. Nor is it meaningful that a partnership return for the calendar year 1947 was filed in February 1948. *W. Ferd Dahlen, supra.* There is nothing in the record to indicate that the partnership carried on any activities following the sale.

The second question is whether any portion of the loss incurred by petitioner Herbert A. Nieman on the sale is deductible in 1947.

In his notice of deficiency respondent determined that petitioner Herbert A. Nieman actually or constructively owned more than 50 per cent of the outstanding stock of Herbert A. Nieman & Co. and that under the provisions of section 24(b) of the Internal Revenue Code of 1939, no loss on the transaction in issue was recognizable to him.

The pertinent provisions of section 24(b) state that in computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly,

---

operating loss deduction for such second preceding taxable year without regard to such net operating loss.

(2) NET OPERATING LOSS CARRY-OVER.—If for any taxable year the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the two succeeding taxable years, except that the carry-over in the case of the second succeeding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the intervening taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d)(1), (2), (4), and (6), and (B) by determining the net operating loss deduction for such intervening taxable year without regard to such net operating loss and without regard to any net operating loss carry-back. For the purposes of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1941 shall be reduced by the sum of the net income for each of the two preceding taxable years (computed for each such preceding taxable year with the exceptions, additions, and limitations provided in subsection (d)(1), (2), (4), and (6), and computed by determining the net operating loss deduction without regard to such net operating loss or to the net operating loss for the succeeding taxable year).

(c) AMOUNT OF NET OPERATING LOSS DEDUCTION.—The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d)(1), (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in the case of a corporation, the normal-tax net income (computed without such deduction and without the credit provided in section 26(e)) ;

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \* \*

(4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117(b). As so computed the amount deductible on account of such losses shall not exceed the amount includible on account of such gains.

between an individual and a corporation more than 50 per cent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual. For the purposes of section 24(b) an individual is considered as owning the stock owned, directly or indirectly, by or for his partners, brothers and sisters, spouse, ancestors, and lineal descendants.

Considering only the stock held by him, his brothers, sister, wife, and partners, Herbert A. Nieman owned actually or constructively at least 6,511 of the 10,000 shares of Herbert A. Nieman & Co. stock outstanding prior to November 29, 1947. Similarly, considering only the shares of stock held by him, his brothers, sister, and wife, Herbert A. Nieman owned actually or constructively at least 7,159 of the 12,980 shares of Herbert A. Nieman & Co. stock outstanding after November 29, 1947.

We have held that the sale entered into by petitioners was a sale of their partnership interests. It is clear that the sale by Herbert A. Nieman of his partnership interest in Nieman Fur Farms Co. to Herbert A. Nieman & Co. was the sale of property by an individual to a corporation, more than 50 per centum of the stock of which was owned by the individual. *Nathan Blum*, 5 T.C. 702, 711 (1945). Consequently, no loss on the sale is deductible by petitioner Herbert A. Nieman. It does not matter that the sale was a bona fide arm's-length transaction. *Frank C. Engelhart*, 30 T.C. 1013 (1958), and cases cited therein.

*Decisions will be entered under Rule 50.*